<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WENDELL JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN CHARLES ELLIS, *et al.*, <br><br> Defendants. | Civil Action No. 20-11472 (MAS) <br><br> **OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on the Court's *sua sponte* screening of Plaintiff Wendell Johnson's amended complaint (ECF Nos. 29, 31) in this prisoner civil rights matter. As Plaintiff has previously been granted *in forma pauperis* status in this matter (ECF No. 13), this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, Plaintiff's religious exercise claims shall be permitted to proceed at this time against Defendant Ellis only, and all of Plaintiff's remaining claims shall be dismissed without prejudice.

I.      <u>**BACKGROUND**</u>

At the time relevant to the allegations in his amended complaint,[1] Plaintiff was a state criminal detainee incarcerated at the Mercer County Correctional Center. (ECF No. 29 at 2-3.) In

---

[1] Plaintiff has since been convicted and is now confined in Northern State Prison. (ECF No. 29 at 2-3.)

his amended complaint, Plaintiff seeks to raise claims against state officials related to his incarceration during the COVID-19 pandemic which led to his contracting the virus in May 2020. Plaintiff believes he contracted COVID-19 from contact with a guard who transported him to a court proceeding in March 2020.  (ECF No. 29-1 at 1-15.)  Specifically, Plaintiff takes issue with the Governor, the state Attorney General, the state public defender, the head of the N.J. Homeland Security office and the ACLU on the basis that they were responsible for approving and enforcing the state's bail reform laws under which Plaintiff was held during the pandemic and insomuch as they did not order his release as part of consent decisions issued during the height of the pandemic in the summer of 2020 during which some, but not all, state pretrial detainees were released.  (*Id.* at 1-2.)  Plaintiff believes that his being detained and not released was the result of his indictments. Several of the indictments were dismissed in 2022 after Plaintiff pled guilty and was convicted on another indictment, which Plaintiff apparently believes was the system being gamed to keep him imprisoned rather than additional counts which were dismissed as a result of his guilty plea.  (*See* ECF No. 29-1 at 1-5; 29-2 at 1-5.)

Plaintiff additionally seeks to raise claims against Charles Ellis, the warden of the county jail in which he was housed during spring 2020 and thereafter until his conviction, for the conditions of confinement imposed upon him which he believes resulted in his being infected with COVID-19.  (*Id.* at 2-15.)  Although Plaintiff's contentions are presented largely in a not-fully-coherent stream-of-consciousness style, it appears that Plaintiff takes issue with the locking down of the jail, quarantine restrictions which Plaintiff believes were both too harsh and not restrictive enough, restrictions on clergy entering the facility, and the inability to see his outside mental health doctors which forced him to use jail medical staff who he believes were inadequate.  (*Id.* at 2-5.) In his final claim, Plaintiff asserts that, to practice his Christian faith, he must be provided with access to clergy to conduct worship services, and that the jail's lockdown rules implemented by

Defendant Ellis prevented any such clergy members from entering the facility.  Plaintiff asserts that this violated his rights under the First Amendment and the Religious Land Use and Incarcerated Persons Act ("RLUIPA").  (ECF No. 29-1 at 5, 12; ECF No. 31.)

## II.   LEGAL STANDARD

Because Plaintiff has been granted *in forma pauperis* status, this Court is required to screen his amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  Pursuant to the statute, this Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

3

plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   **DISCUSSION**

In his first series of claims, Plaintiff seeks to argue that various state officials—the Governor of New Jersey, Attorney General, head of Homeland Security, and public defender—as well as the state branch of the ACLU, are liable to him for adopting and agreeing with a state bail reform law which resulted in his detention pending trial, and to COVID-related release protocols which, while releasing many pretrial detainees, did not result in Plaintiff's release because of the severity of the indictments against him, some of which were dismissed following his guilty plea.[2] Plaintiff does not plead facts, however, indicating that any of these state officials or outside parties were in any way responsible for the actual bail finding or lack of release in *his own case*.

In order to plead a plausible claim for relief under § 1983, a plaintiff must plead facts which, if proven, would show that the named defendants had personal involvement in the alleged

---

[2] Although Plaintiff attempts to resume his earlier claims that these indictments were "void ab initio," the documents he submits clearly indicate that although *some* of his indictments were dismissed, they were dismissed as a result of a guilty plea to one indictment and its ten-year sentence, and not as a result of a finding that those indictments themselves were void or improper. (*See* ECF No. 29-2 at 1-6.) Plaintiff has thus not pled facts indicating that these indictments were actually improper, and the documents he provides undercut any bald allegation to that effect Plaintiff has made in his complaint.

wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  A supervisor or employer may not be held vicariously liable for the actions of his subordinates.  *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).  Where the allegations are targeted at supervisory officials, municipal defendants, or contracting companies, a plaintiff seeking to show personal involvement must normally plead facts indicating that the supervisor, municipality, or corporation put into place a policy, custom, or practice which caused the constitutional violation alleged. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  A formally enacted policy, practice, or custom must therefore be the "moving force" behind the alleged constitutional violation to hold the municipality or corporate contractor liable.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles County v. Humphries*, 562 U.S. 29, 35-36 (2010).

Although Plaintiff lays the fault for his imprisonment during the COVID-19 pandemic at the feet of various state officials, the Public Defender, and the ACLU[3] for adopting and putting into place a bail reform law, it was the legislature that adopted the law and the Governor who signed it into effect, and both the legislature and governor are immune from suit for so doing. *See, e.g., Gibbs v. Minner*, No. 07-342, 2007 WL 2071749, at *3 (D. Del. July 19, 2007).  The protocols for releasing some detainees from jail during the pandemic was likewise put into place, as Plaintiff appears to acknowledge in his amended complaint, by the New Jersey Supreme Court rather than the named Defendants.  *See generally Matter of Request to Release Certain Pretrial Detainees*, 245 N.J. 218 (2021).  To the extent Plaintiff attempts to blame the named Defendants for his imprisonment, he either fails to allege how they were directly involved in the alleged wrongs or

---

[3] The Court notes that the ACLU, as a non-governmental advocacy organization, is not a branch of the state and is not a state actor.  It is, therefore, likely not liable under § 1983 even had Plaintiff pled an otherwise actionable claim. *See, e.g., Nicini v. Morra*, 212 F.3d 789, 806 (3d Cir. 2000) (liability under § 1983 applies only to individuals "acting under color of state law").

fails to account for their immunity from suit for adopting the bail reform law in the person of Governor Murphy. Plaintiff's criminal charges, which ultimately resulted in his conviction on arson charges, are in and of themselves sufficient to support criminal detention under the constitution. *See, e.g., Henderson v. New Jersey*, No. 20-12949, 2021 WL 487133, at *2-3 (D.N.J. Feb. 10, 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *United States v. Salerno*, 481 U.S. 739, 742 (1987)). In addition, Plaintiff has not otherwise presented facts connecting the named Defendants to the decision of the New Jersey state courts to order Plaintiff's detention pending trial. Plaintiff, consequently, has failed to plead facts indicating that these Defendants were personally involved in his detention in any way that is not subject to immunity. Plaintiff's claims against the Defendants other than Defendant Ellis are therefore dismissed without prejudice at this time.

Turning to Defendant Ellis, Plaintiff seeks to raise three series of claims – claims once again asserting that Warden Ellis's adoption of COVID guidelines for the Mercer County jail effectively amounted to punitive conditions of confinement or deliberate indifference to Plaintiff's medical needs, as well as a claim that Ellis denied Plaintiff his religious exercise rights. Turning first to Plaintiff's religious claims, Plaintiff once again alleges that his right to religious expression was denied, in violation of the constitution and RLUIPA. This Court finds no basis for the dismissal of these claims at this time and will permit them to proceed. The Court only briefly notes that Plaintiff contends that his sincerely held religious beliefs as a Christian include that it is "necessary for a preacher . . . to teach the word of God (Jesus Christ)" either in person in the jail or "by video screen," that Plaintiff made requests for either an in person or by video preacher, and was denied that by Ellis. (*See* ECF No. 31 at 6.) Plaintiff has thus pled that his sincerely held religious beliefs were infringed without sufficient cause, which is sufficient to survive initial

screening. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015) (as to RLUIPA); *DeHart v. Horn*,

227 F.3d 47, 51-52 (3d Cir. 2000) (as to the First Amendment).

Plaintiff's other COVID-related claims, however, suffer the same deficiencies that led to

their dismissal following Plaintiff's initial complaint.   As this Court previously explained to

Plaintiff,

> In his final series of claims, Plaintiff alleges that Warden Ellis
> denied him his right to Due Process by either subjecting him to
> punitive conditions of confinement in light of COVID-19 or by
> being deliberately indifferent to his medical needs.   The Third
> Circuit reaffirmed the legal standards to be applied to such claims in
> the COVID-19 context in its decision in *Hope v. Warden York
> County Prison*, 972 F.3d 310 (3d Cir. 2020).   As the Court of
> Appeals explained in *Hope*, in evaluating the assertion that a
> prisoner's conditions of confinement are unconstitutionally
> punitive, "[t]he touchstone for the constitutionality of detention is
> whether conditions of confinement are meant to punish." *Id.* at
> 325-27.   In the absence of a showing that detention facility staff
> acted with an express intent to punish the plaintiff, determining
> whether conditions amount to unconstitutional punishment requires
> that the district court "consider the totality of the circumstances of
> confinement, including any genuine privations or hardship over an
> extended period of time, and whether conditions are (1) rationally
> related to their legitimate purpose or (2) excessive in relation to that
> purpose." *Id.*   In reviewing the conditions and actions of detention
> officials and their relation to the Government's legitimate interest in
> detaining aliens awaiting the conclusion of removal proceedings,
> reviewing courts "must acknowledge that practical considerations
> of detention justify limitations on many privileges and rights," and
> "ordinarily defer" to the expertise of prison officials in responding
> to COVID-19 unless there is "substantial evidence in the record that
> the officials have exaggerated their response" to the situation. *Id.*
> Where a government entity has a strong interest in detaining the
> plaintiff – which is undoubtedly the case for a criminal defendant
> awaiting sentencing as Plaintiff asserted himself to be in his
> complaint – the Third Circuit rejected the assertion that detention
> during the COVID-19 pandemic would amount to unconstitutional
> punishment where the facility in which the plaintiff is housed had
> taken significant, concrete steps aimed at mitigating the threat posed
> to detainees, notwithstanding serious pre-existing health conditions
> which may render those detainees more likely to suffer serious
> complications should they contract the virus. *Id.* at 327-29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the plaintiff] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application *in unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the detaining officials cannot entirely "eliminate all risk" of contracting COVID-19, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330-31.

(ECF No. 27 at 5-7).

As in his original complaint, Plaintiff once again clearly acknowledges, both in his allegations and in copies of Ellis's certifications of which he requests this Court take notice, that the warden *did* take measures to curtail the risks of COVID-19, including the testing of inmates and quarantine procedures for infected inmates. (ECF No. 1 at 6-14.) Likewise, documents Plaintiff has submitted indicate that Ellis took further steps, including the testing and quarantining of infected guards, daily health checks for infected prisoners, increased facility cleaning and sanitization, intake medical screening for individuals entering the facility, limitations on outside individuals entering the jail, and the provision of protective equipment where appropriate. (ECF No. 1-3 at 10-13.) In light of these clear, concrete steps aimed at limiting the risk of COVID-19 to prisoners at the jail, Plaintiff has failed to plead sufficient facts to support a claim that Warden Ellis has either subjected him to unduly punitive conditions of confinement or has been

deliberately indifferent to Plaintiff's medical needs in light of COVID-19. That Plaintiff once again alleges that he has been denied access to a private doctor from outside the facility does not alter this conclusion in the absence of factual allegations suggesting he has not received any treatment for his ongoing medical conditions while detained, allegations which are once again completely lacking.[4] Plaintiff's deliberate indifference and punitive conditions of confinement claims are therefore dismissed without prejudice. *Hope*, 972 F.3d at 327-31.

Finally, the Court notes that in addition to his amended complaint documents (ECF Nos. 29, 31), Plaintiff has submitted numerous proposed addenda and supporting documents which he may or may not have intended to serve as additions to his complaint. (ECF Nos. 32-39.) Such attempts are entirely improper. "[N]either [Federal Rule of Civil Procedure] 8, which governs pleadings, nor [Federal Rule of Civil Procedure] 15, which governs amended and supplemental pleadings, permits [a plaintiff] to submit . . . addenda to his Complaint in . . . piecemeal fashion." *Lewis v. Sessions*, No. 17-5475, 2017 WL 7313822, at *2 (D.N.J. Nov. 3, 2017). Instead, Rule 15 permits a plaintiff to amend his complaint once as a matter of right prior to the service of an answer, and thereafter to amend only with leave of court. *See* Fed. R. Civ. P. 15(a)(1). Plaintiff in this matter had leave to file one consolidated amended complaint, which he did, albeit in two parts. (*See* ECF Nos. 29, 31.) Plaintiff's remaining documents are thus improper attempts at piecemeal amendment filed without leave of court or authorization. As they are improper, this Court will not consider them as portions of Plaintiff's complaint. To the extent Plaintiff chooses to seek leave to further amend his complaint, he may do so only by filing a formal motion for leave to amend accompanied by a complete proposed amended complaint containing *all* of his claims in a single

---

[4] Although Plaintiff does state that he believes that jail medical staff are incompetent, he does not detail what treatment he did or did not receive, nor does he allege any specific failure in treatment, and certainly no such failure attributable to Warden Ellis.

document, or through otherwise complying with the terms of Rule 15.  Any further piecemeal addenda not filed as part of a comprehensive motion to formally amend the complaint will not be considered to be part of this matter other than as evidence to support the claims presented in any formal amendment.

## IV.    <u>CONCLUSION</u>

For the reasons expressed above, Plaintiff's religious expression claims shall **PROCEED** at this time, and Plaintiff's remaining claims shall be **DISMISSED WITHOUT PREJUDICE**. An order consistent with this Opinion will be entered.


s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**