**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENDELL JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN CHARLES ELLIS, et al.,<br><br>    Defendants. | Civil Action No. 20-11472 (MAS) (RLS)<br><br>**OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Warden Charles Ellis's ("Defendant" or "Defendant Ellis") motion to dismiss (ECF No. 81) Plaintiff's Second Amended Complaint ("SAC") (ECF No. 80) in this prisoner civil rights matter. Plaintiff filed opposition to the motion (ECF No. 82), to which Defendant replied (ECF No. 86). Plaintiff also filed an improper sur-reply without receiving leave of court. (ECF No. 87.) For the following reasons, Defendant's motion shall be granted, and Plaintiff's SAC shall be dismissed in its entirety.

**I. BACKGROUND**

  During the relevant events at issue in the SAC, Plaintiff was a state-pretrial detainee facing charges including an aggravated arson charge of which he was ultimately convicted. (*See generally* ECF No. 80.) In the SAC, Plaintiff raises three sets of claims related to his time in the county jail, operated by Defendant Ellis, during the COVID-19 pandemic in the spring and summer of 2020: (1) a claim asserting that the COVID-19 lockdowns denied Plaintiff, a practicing Christian who believes that frequent religious worship led by an ordained Christian minister is required by

his faith, his right to religious exercise because he was denied access to any such ministers or regular worship for several months; (2) a claim asserting that the jail conditions during the pandemic amounted to deliberate indifference to his medical needs in light of the COVID-19 virus or that conditions imposed during the pandemic were overly punitive in light of the virus; and (3) a claim in which he attempts to assert that various state prosecutorial figures, public defenders, and legal aid organizations improperly held him without bail based on his arson charges and other dropped charges. (*Id.*) Defendant Ellis moves to dismiss Plaintiff's Free Exercise claims, apparently operating under the belief that only those claims are pending in the SAC in light of language to that effect in the magistrate judge's order that granted Plaintiff leave to file the operative SAC. (ECF No. 81.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.  DISCUSSION

In his motion to dismiss, Defendant Ellis argues that he is entitled to qualified immunity as to Plaintiff's Free Exercise claim.[1] The doctrine of qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In evaluating a claim of qualified immunity, courts apply a two pronged test: first, the court must determine if, considered in the light most favorable to the plaintiff, the facts alleged assert a violation of a constitutional right; and second, the court must determine if the right which was allegedly violated was clearly established such that "it would [have been] clear to a reasonable officer that his conduct was

---

[1] In the SAC, Plaintiff again asserts that his rights are protected by RLUIPPA and the RFRA. As the Court previously explained to Plaintiff, however, any claim Plaintiff had under RLUIPPA is now moot as money damages are not available under the statute and any claim for declaratory or injunctive relief under the statute became moot once Plaintiff was transferred out of the county jail and into state prison. *See, e.g., Banks v. Sec'y Pa. Dep't of Corr.*, 601 F. App'x 101, 103-04 (3d Cir. 2015). Likewise, the RFRA applies only to burdens on religious liberty imposed by the federal government, and does not apply to burdens, such as those here, imposed solely by state and local governmental entities. The RFRA therefore does not apply to Plaintiff's case. *See, e.g., Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp. 3d 317, 326 n.5 (E.D. Pa. 2016). Thus, to the extent Plaintiff intended to reraise his RLUIPPA claims or raise RFRA claims, those claims are dismissed.

unlawful in the situation he confronted." *Id.* (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011)). A negative answer to either prong will warrant the granting of qualified immunity to the defendant. *Id.* To determine whether a right was clearly established, the court must "define the right allegedly violated at the appropriate level of specificity" and determine whether existing caselaw at that time made the right in question "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* In considering this question, the court must look first to the holdings of the Supreme Court, and the Third Circuit, and then to whether a sufficient robust consensus of persuasive authority in the various courts of appeals exists which would support finding the right to be clearly established. *Id.* at 165-66.

Here, Plaintiff alleges that his sincerely held beliefs required access to ordained Christian ministers for worship services on a regular basis, and that Defendant Ellis's COVID-19 related restrictions on jail entry denied him such access to regular worship through ordained ministers for the several months between the onset of COVID-19 restrictions in late spring of 2020 and the filing of this matter in August 2020. To state a claim for a violation of his First Amendment right to free exercise of religion, a prisoner plaintiff must allege facts showing that a jail policy substantially burdened the prisoner's practice of religion, and that this policy was not reasonably related to legitimate penological interests. *See Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 534 (D.N.J. Jan. 28, 2019). A regulation that impugns a prisoner's religious exercise thus must have a "valid, rational connection" to the state's proposed legitimate interest which is not arbitrary or irrational. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). In determining whether a regulation is rationally connected to a legitimate penological interest, courts may also look to: whether the plaintiff had alternative means of exercising his rights; the impact accommodation of the plaintiff's rights would have on guards, other inmates, and prison resources; and the absence of ready alternatives. *Id.* at 90-91. In the SAC and other filings, Plaintiff essentially asserts that he was denied any and all

4

access to ordained ministers and appropriate worship services for several months during the COVID-19 pandemic's height. Considered in the light most favorable to Plaintiff, and having considered Plaintiff's operative complaint and related filings, that claim does present an instance in which Plaintiff's religious exercise was substantially burdened. Plaintiff effectively could resort to nothing but private prayer for several months and was otherwise without worship services for a considerable period. That said, the state did have a legitimate interest in controlling the flow of people into a county jail during a recognized pandemic. The accommodation of Plaintiff's rights by permitting greater in person access to the jail by religious ministers and their staff would have both affected available jail resources during the pandemic and would have potentially exposed Plaintiff, staff, and other inmates to potential infections. Here, Plaintiff does not allege that he was completely deprived of any ability to worship God, view televised worship services,[2] or offer prayer during the lockdowns. Considered in total, Plaintiff has a borderline free exercise claim in which his rights to religious practice were burdened. That burden, however, was imposed as part of a neutral policy of excluding non-essential entrants into the jail, which was most likely sufficiently rationally related to the state's interest in slowing the spread of COVID-19 in its jails during an emergency situation. Plaintiff thus likely fails to state a plausible claim for a constitutional violation.

Even if Plaintiff did state such a claim, however, Plaintiff cannot show that the violation in question was clearly established. Defined at the appropriate level of specificity, the right Plaintiff asserts in this matter is the right to have frequent in person access to ministers and worship services

---

[2] The Court notes that even many who were not detained were subjected to limited in person worship opportunities during this same period, with many churches, mosques, and synagogues being closed or worship opportunities limited by the religious institutions themselves because of the perceived risk of COVID-19 and its spread, and were thus left with the use of outdoor or televised services in place of regular in person worship in their churches or similar institutions.

5

during a nationally recognized pandemic situation in which all other non-essential entry into the jail in which the plaintiff is housed has been halted to protect the health of the inmates. Plaintiff has not identified, and this Court is not aware of, a case that clearly establishes such a right. Instead, the cases at hand suggest that some deference must be provided to jail staff in their response to the novel pandemic situation during its height, and courts should not infer constitutional violations where good faith efforts are being made to curtail what is perceived to be a deadly, difficult to contain, pathogen in the absence of clear guidance. *See, e.g.*, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325-331 (3d Cir. 2020). As it would not have been clear that a temporary curtailing of in-person worship services and access to ordained ministers during the medical emergency of a recognized pandemic during which public guidance suggested that lock downs and limited access to jails was the wisest course for protecting inmates, the right Plaintiff espouses was not clearly established at the time of the alleged constitutional violations. Defendant Ellis is therefore entitled to qualified immunity as to Plaintiff's free exercise claims. Defendant Ellis's motion shall be granted, and Plaintiff's free exercise claims against him will be dismissed with prejudice.[3]

In addition to his free exercise claims, which are the subject of Defendant's motion, Plaintiff also attempts to raise other claims in his SAC. First, Plaintiff tries to reassert claims that the conditions of confinement imposed by Defendant Ellis and others during the COVID-19 pandemic violated his Due Process rights because they either amounted to punishment or deliberate indifference to Plaintiff's needs, even though Plaintiff acknowledges the considerable

---

[3] It is not clear whether Plaintiff intended to raise his free exercise claim as to any of the other Defendants Plaintiff attempts to reassert in his SAC. To the extent Plaintiff did intend to raise this claim against anyone other than Ellis—the only person discussed clearly in Plaintiff's SAC as to this issue—that claim must be dismissed on qualified immunity grounds or lack of clear personal involvement.

remedial measures Ellis took by incorporating into his SAC several certifications made by Ellis to that effect. Second, Plaintiff attempts to raise claims against the state attorney general, the state public defender, and attorneys involved in his criminal proceedings. Plaintiff asserts that his being held without a grant of bail was improper because Plaintiff does not believe that the aggravated arson charge was enough to warrant detention and his other charges were ultimately dropped.[4] As Plaintiff has previously been granted *in forma pauperis* status in this matter, the Court is required to screen these claims and dismiss them to the extent they are frivolous, malicious, fail to state a claim upon which relief may be granted, or are raised against immune Defendants. *See* 28 U.S.C. § 1915(e)(2)(B).

As this Court previously explained to Plaintiff numerous times, (*see* ECF No. 27 at 5-8; ECF No. 46 at 7-8), the COVID-19 pandemic alone is insufficient to show that Plaintiff was subjected to deliberate indifference or overly punitive conditions, and the strong remedial measures taken by Ellis and the State to address the pandemic indicate that they were neither deliberately indifferent to the medical needs of inmates housed in the jail during the pandemic nor did they impose those remedial conditions with an intent to punish sufficient to warrant liability under the Fourteenth Amendment. *See, e.g., Hope*, 972 F.3d at 325-31 (noting that courts must defer to jail officials' expertise in responding to pandemic and an inmate cannot show pandemic conditions amount to deliberate indifference to medical needs or unconstitutional conditions of confinement where the jail staff took concrete action to remediate the threat of the virus in the

---

[4] The magistrate judge in this matter granted Plaintiff leave to file his SAC only after reviewing Plaintiff's free exercise claims and without comment as to Plaintiff's remaining claims. Without an explicit finding in the order that these claims are futile, the Court cannot ignore the claims and treat them as if they were not in the SAC. The Court, nevertheless, understands that Defendant does not address them in his motion to dismiss in light of the magistrate judge's discussion and grant of leave to amend only the free exercise claim. This Court therefore screens and addresses the other claims here *sua sponte*.

uncertain environment at hand during the pandemic). Plaintiff's deliberate indifference and conditions of confinement claims related to the COVID-19 pandemic are therefore once again dismissed.[5]

Turning to Plaintiff's bail-related claim, Plaintiff essentially argues that the denial of bail pending trial was a violation of his constitutional rights. Plaintiff believes his aggravated arson charge alone was insufficient to warrant detention without bail and his other charges were ultimately dropped. Plaintiff believes that this amounts to various state actors and public defenders engaging in sham charges to keep him detained. As this Court previously explained to Plaintiff, however, Plaintiff's arson charges alone are more than sufficient to support his detention without bail pending trial. *See, e.g., Henderson v. New Jersey*, No. 20-12949, 2021 WL 487133, at *2-3 (D.N.J. Feb. 10, 2021); *United States v. Salerno*, 481 U.S. 739, 742 (1987). More to the point, a state prisoner seeking to challenge the fact or duration of his confinement, including his pretrial confinement, has but one remedy—a habeas corpus petition—unless or until the confinement in question is overturned, expunged, or otherwise declared invalid, and a prisoner may not seek monetary damages or other relief under § 1983 for such detention in the meantime. *See, e.g.,*

---

[5] Although the Court need not address the issue in detail at this time, the Court notes that several Defendants involved in Plaintiff's deliberate indifference, conditions of confinement, and bail-related claims either appear to lack personal involvement in the wrongs alleged in the SAC sufficient to infer liability, *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988), or are immune from suit. *See, e.g., Polk County v. Dodson*, 454 U.S. 312, 318 (1981) (public defenders are immune in a civil rights matter as they are not state actors when they act as defense counsel); *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976) (prosecutors generally immune for prosecutorial actions such as charging decisions); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (state and its arms are immune from suit in federal court under the Eleventh Amendment and are not persons subject to suit in a civil rights matter; *Nicini v. Morra*, 212 F.3d 789, 806 (3d Cir. 2000) (liability under § 1983 only applies to state actors, not private entities and actors). Likewise, to the extent that Plaintiff intended to raise his free exercise claim against anyone other than Defendant Ellis, Plaintiff has failed to plead facts suggesting any other Defendant was personally involved in the denial of his right to exercise his faith, and any such claim against any other Defendant must therefore be dismissed without prejudice at this time. *Rode*, 845 F.2d at 1207-08.

*Giallorenzeo v. Beaver County*, 241 F. App'x 866, 867-68 (3d Cir. 2007). This rule applies even when the litigant is "no longer in custody" pursuant to the challenged state court ruling and "can no longer seek federal habeas corpus relief." *Id.* at 867. As Plaintiff never had his pretrial detention without bail invalidated, he cannot now resort to a § 1983 claim to attack that period of detention, notwithstanding his conviction and transfer to state prison. Plaintiff's claim is barred unless and until he has his detention without bail invalidated through state court proceedings and he may not raise his bail claims here. Plaintiff's bail-related claims must therefore be dismissed without prejudice at this time.[6] As all of Plaintiff's claims shall be dismissed, Plaintiff's SAC shall be dismissed in its entirety.

## IV.   CONCLUSION

For the reasons expressed above, Defendant Ellis's motion to dismiss (ECF No. 81) is **GRANTED**; Plaintiff's free exercise claims against Defendant Ellis are **DISMISSED WITH PREJUDICE** as Ellis is entitled to qualified immunity, and Plaintiff's remaining claims are all **DISMISSED WITHOUT PREJUDICE**. An order consistent with this Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: October 15, 2025

---

[6] Likewise, to the extent Plaintiff's sham charges claim could be construed as a species of a malicious prosecution claim, such a claim is barred until Plaintiff secures a favorable termination of his claims, which Plaintiff cannot show in light of his ultimate conviction on aggravated arson charges. *See Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

9